UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| CHARLES COIT,<br>Social Security No. XXX-XX-5385),<br><br>                Plaintiff,<br><br>   v.<br><br>JO ANNE B. BARNHART, Commissioner<br>of the Social Security Administration,<br><br>                Defendant. | )<br>)<br>)<br>)<br>)<br>)    3:04-cv-0142-RLY-WGH<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM DECISION AND ORDER

### I. Statement of the Case

Plaintiff, Charles Coit, seeks judicial review of the final decision of the Social Security Administration, which ceased continuance of Plaintiff's Disability Insurance Benefits. The Court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

Plaintiff was awarded disability benefits on April 14, 1998, and those benefits ceased when Plaintiff was found no longer to be disabled as of April 29, 2002. (R. 59-60). At the January 24, 2004, hearing before an Administrative Law Judge ("ALJ"), Plaintiff was denied a reinstatement of his benefits. The ALJ found that Plaintiff's physical impairment had experienced medical improvement and that his residual functional capacity ("RFC") had increased. Plaintiff's request for review before the Appeals Council was denied, and he comes now seeking this judicial review of the ALJ's decision.

## II.  Statement of Facts[1]

### A.  Vocational Profile

Plaintiff was 55 years old as of the date of his administrative hearing.  (R. 31).  He is an African American male that possesses a tenth grade education and past relevant work history as a truck driver and a construction laborer.  (R. 14, 31-32).

For a brief time in 2002, he performed seasonal labor for a temporary agency.  (R. 34).  This work was for eight hours per day and a 40 hour work week for a couple of weeks.  (R. 35).  Plaintiff missed a couple of days of work and was required to go back on his nebulizer after this work.  (R. 35).  The vocational expert ("VE") testimony established at the administrative hearing that Plaintiff's past work is classified as medium in exertion and unskilled to semi-skilled in nature.  (R. 14).  It was determined that Plaintiff can read and write.  Because of a breathing impairment, his work capacity is limited by no work at temperature extremes in a clean work environment.  (R. 14).  The VE testified that with restriction to a clean air environment, Plaintiff could perform 3,000 medium jobs and 5,000 light packaging jobs in the Evansville area, and additional jobs as an inspector, an assembler, and a machine operator.  (R. 50-51).

### B.  Plaintiff's Testimony and Other Statements

Plaintiff testified that he had been hospitalized for three days in 2003 due to symptoms of asthma.  (R. 37).  Plaintiff stated that he weighed 272 pounds at the time of

---

[1]Based on Plaintiff's failure to summarize the medical records and the Court's comparison of defendant's summarization with the actual record, the Court determined that defendant's summarization was accurate and proceeded to take most of the facts in this opinion directly from defendant's Brief.

the hearing and had been recently placed on a diet by his doctor. (R. 38). Plaintiff exercised on a treadmill for 45 minutes or an hour twice a week to address his weight problem. (R. 38-39). Plaintiff testified that he did most of the cooking at home, and he accompanied his girlfriend grocery shopping. (R. 42). Plaintiff went to church every Sunday and to Alcoholics Anonymous meetings on Saturday evening. (R. 43). Plaintiff enjoyed watching movies and television, going out to dinner, and visiting his brother. (R. 43-44).

Plaintiff testified that he used a nebulizer six times per day, with each treatment taking 15-17 minutes. He also takes Prednizone and a blood pressure medication. Plaintiff stated that "it's been a couple of years here where I've been doing pretty good . . . I don't do drugs any more, I don't smoke any more, I try to stay away from the smoking as much as possible. So that helps a lot also." (R. 45). During the last three months, however, his asthma has been worse. (R. 46).

**C. Medical Evidence**

Plaintiff had repeated hospitalizations for asthma between 1996 and 1997. (R. 204-18). In January 1997, Plaintiff was hospitalized under David Stricklin, M.D., who noted that Plaintiff's pulmonary function tests showed forced expiratory volume ("FEV1") of 1.85 (49% of predicted) and a forced vital capacity ("FVC") of 3.43 (67% of predicted) with no significant change with bronchodilators. (R. 191-92). Plaintiff had been noncompliant with medications, continued to smoke cocaine, and did not keep follow-up

appointments. (R. 191). Dr. Stricklin administered Theophylline intravenously and an equivalent dosage was adjusted for oral intake. (R. 191). Three months later, Plaintiff was again admitted to the hospital for treatment of asthma symptoms. (R. 201-02). Plaintiff's lungs showed diffuse wheezing bilaterally with the use of accessory muscles and some labored respirations. (R. 202). In September of that same year, Plaintiff was again admitted to the hospital, but was released after he showed dramatic improvement with steroid treatment. (R. 204). In November 1997, Plaintiff was admitted for asthma exacerbation to the intensive care unit. (R. 221-12). This was followed by another admission in December. (R. 215).

In February 1998, Plaintiff was examined by William S. Mullican, M.D., for complaints of intermittent asthma attacks. (R. 222-24). Plaintiff's lungs showed some scattered expiratory wheezes. (R. 223). But his lungs were clear to auscultation and percussion, his breath sounds were normal, and there were no rales or rhonchi. (R. 224). Plaintiff's pulmonary function testing indicated a moderate obstruction as well as low vital capacity, possibly from a concomitant restrictive defect. (R. 227).

In February 2001, Plaintiff reported to Jeff W. Selby, M.D., that he was "doing good" and that he had not required hospital treatment for asthma in approximately eight months. (R. 230). Plaintiff had not taken Prednisone in eight months. (R. 230). Plaintiff's chest was clear upon examination, and he was moving air well. (R. 230). Dr. Selby recommended no change in treatment and a follow-up visit in six months. (R. 230).

In March 2001, Plaintiff was hospitalized for a severe asthma attack which required intubation and mechanical ventilation. (R. 235-77). Plaintiff had been smoking a lot of cocaine on the day of his hospital admission. (R. 247). Plaintiff lived with his mother and girlfriend, both of whom smoked heavily. (R. 243). Plaintiff was receiving disability benefits and spent about $700 per month on cocaine. (R. 248). Plaintiff's prognosis was changed to guarded due to his noncompliance with treatment and cocaine dependence. (R. 235). Between March 24, 2001, and April 6, 2001, Plaintiff was admitted to HealthSouth Rehabilitation Hospital for "full rehabilitation" after being very debilitated. (R. 279). At the time of admission he had difficulty walking and dressing, had hip and lower trunk instability, and required bathroom assistance. (R. 279). He was assessed as having debilitation, severe contractures at shoulders and elbows, coordination deficits, asthma, C.O.P.D., history of substance abuse and deficits in mobility and ADL skills. (R. 286).

On May 10, 2001, Plaintiff reported being two months free of narcotics and tobacco and that he had begun working a third shift job. (R. 278). Plaintiff was doing well and was able to perform all activities of daily living, as well as his new job on that date. (R. 278). By September 2001, Plaintiff had remained drug-free for approximately six months and had only occasional flare-ups of asthma with no severe attacks. (R. 292). David B. Hardin, M.D., recommended a drug rehabilitation program to support his current condition. (R. 278).

In March 2002, Plaintiff reported that he had only occasional exacerbations of asthma which responded well to medicine. (R. 312). Examination of Plaintiff's chest

revealed normal breath sounds with no wheezing, rales or dullness. (R. 312). Dr. Sanders opined that Plaintiff appeared to be healthy upon examination and was in no acute distress. (R. 313). Plaintiff did not stay to take a pulmonary test scheduled for that day. (R. 313).

On April 28, 2002, F. Montoya, M.D., reviewed Plaintiff's medical records at the request of the state agency. (R. 182-89). Based on that review, Dr. Montoya opined that Plaintiff did not have any exertional limitation as a result of his asthma impairment, but that he needed to avoid exposure to temperature extremes, wetness, humidity, fumes, odors, dusts, and gases. (R. 186).

In August 2002, Plaintiff was hospitalized one time with an exacerbation of asthma symptoms. (R. 332-39). Chest x-rays showed no active pulmonary disease. (R. 335). Physical examination showed no active respiratory symptoms except for mild wheezing. (R. 333). Pulmonary function study test results from August 14, 2002, and August 20, 2002, show an FEV of 2.98 (R. 319) and 3.38 (R. 324), respectively, which represented no more than a mild obstructive pulmonary impairment. Plaintiff's blood pressure was well controlled on medication and there was no evidence of any other impairment.

Records from Plaintiff's pharmacy for the period of January 2003 through January 22, 2004, show that he was continuously prescribed Prednisone, Diovan, Doxycycl, Viagra, and Theophylline during that time. (R. 341-46).

On January 20, 2004, William C. Houser, M.D., wrote on a prescription pad that Plaintiff had been under his care since 2002. (R. 349). Dr. Houser stated that Plaintiff

used nebulizer treatments four to six times a day and that he was physically unable to work. (R. 349).

### III. Standard of Review

An ALJ's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); see also *Perkins v. Chater,* 107 F. 3d 1290, 1296 (7th Cir. 1997). This standard of review recognizes that it is the Commissioner's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility. *Richardson,* 402 U.S. at 399-400. Accordingly, this Court may not re-evaluate the facts, weigh the evidence anew, or substitute its judgment for that of the Commissioner. *See Butera v. Apfel,* 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, even if reasonable minds could disagree about whether or not an individual was "disabled," the Court must still affirm the ALJ's decision denying benefits. *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir. 2000).

### IV. Standard for Continuing Disability

Continuing disability is not presumptive. In order to receive DIB, an individual must be unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment, which could be expected to result in death or to last at least 12 months. 42 U.S.C. § 423(d)(1)(A); *Barnhart v. Walton,* 535 U.S. 212, 219-22 (2002).

An individual's disability ceases when substantial evidence supports a finding that Plaintiff's medically reported impairment improved to the point where Plaintiff is able to participate in substantial gainful activity.  42 U.S.C. § 423(f).

To determine whether an individual's disability continues, there must be an evaluation of a claimant's medical condition using a list of eight questions which consists of the following:

> (1)  Are you engaging in substantial gainful activity?  If you are (and any applicable trial work period has been completed), we will find disability to have ended (see paragraph (d)(5) of this section).
> (2)  If you are not, do you have an impairment or combination of impairments which meets or equals the severity of an impairment listed in Appendix 1 of this subpart?  If you do, your disability will be found to continue.
> (3)  If you do not, has there been medical improvement as defined in paragraph (b)(1) of this section?  If there has been medical improvement as shown by a decrease in medical severity, see step (4).  If there has been no decrease in medical severity, there has been no medical improvement.  (See step (5).)
> (4)  If there has been medical improvement, we must determine whether it is related to your ability to do work in accordance with paragraphs (b)(1)-(4) of this section; i.e., whether or not there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination.  If medical improvement is not related to your ability to do work, see step (5).  If medical improvement is related to your ability to do work, see step (6).
> (5)  If we found at step (3) that there has been no medical improvement or if we found at step (4) that the medical improvement is not related to your ability to work, we consider whether any of the exceptions in paragraphs (d) and (e) of this section apply.  If none of them apply, your disability will be found to continue.  If one of the first group of exceptions to medical improvement applies, see step (6).  If an exception from the second group of exceptions to medical improvement applies, your disability will be found to have ended.  The second group of exceptions to medical improvement may be considered at any point in this process.

   (6)  If medical improvement is shown to be related to your ability to do work or if one of the first group of exceptions to medical improvement applies, we will determine whether all your current impairments in combination are severe (see § 404.1521).  This determination will consider all your current impairments and the impact of the combination of those impairments on your ability to function.  If the residual functional capacity assessment in step (4) above shows significant limitation of your ability to do basic work activities, see step (7).  When the evidence shows that all your current impairments in combination do not significantly limit your physical or mental abilities to do basic work activities, these impairments will not be considered severe in nature.  If so, you will no longer be considered to be disabled.
   (7)  If your impairment(s) is severe, we will assess your current ability to do substantial gainful activity in accordance with § 404.1560.  That is, we will assess your residual functional capacity based on all your current impairments and consider whether you can still do work you have done in the past.  If you can do such work, disability will be found to have ended.
   (8)  If you are not able to do work you have done in the past, we will consider one final step.  Given the residual functional capacity assessment and considering your age, education and past work experience, can you do other work?  If you can, disability will be found to have ended.  If you cannot, disability will be found to continue.

20 C.F.R. § 404.1594(f)(1)-(8).

## V.  Standard of Review for Medical Improvement

An ALJ's decision to discontinue benefits must be supported by substantial evidence.  42 U.S.C. § 423(f)(1)(A).  There must first be substantial evidence that there has been *any* medical improvement in Plaintiff's disability.  20 C.F.R. § 404.1594(b)(1).  There must also be substantial evidence that the medical improvement relates to Plaintiff's work ability; substantial evidence must, therefore, support an ALJ's finding that Plaintiff's RFC has increased.  20 C.F.R § 404.1594(b)(3).

## VI. The ALJ's Decision

The ALJ concluded that Plaintiff's condition had improved as compared with his condition on the date of his most recent favorable decision. (R. 16). The ALJ compared the Plaintiff's conditions as of April 14, 1998 (the last favorable medically reported decision) against current reported medical records. (R. 12). The ALJ reasoned that Plaintiff's physical symptoms medically improved because reports showed only mild wheezing and mild obstruction impairment. (R. 12). Also, the ALJ's decision was supported by evidence that Plaintiff had only one hospitalization during 2001 and a brief stay in 2002. (R. 12). In contrast, Plaintiff's symptoms were shortness of breath, coughing, and wheezing and five hospitalizations in one year as shown in the medical records from 1997 and 1998. (R. 12). The ALJ concluded that Plaintiff's disability ceased on April 29, 2002, because medical records revealed that he experienced improvement which was related to his symptoms and ability to work. (R. 13). Also, Plaintiff was found to have the RFC to perform a reduced range of medium work rendering him no longer eligible for disability benefits. (R. 14).

## VII. The Issues

Plaintiff has raised two issues to be determined by this Court. The issues are as follows:

1. Whether substantial evidence supported a finding that Plaintiff's physical impairment had improved when comparing his condition at the time benefits were awarded to the current medical records.

2. Whether the finding that Plaintiff could perform a significant number of jobs given his RFC was supported by substantial evidence.

**Issue 1:** **Whether substantial evidence supported a finding that Plaintiff's physical impairment had improved when comparing his condition at the time benefits were awarded to the current medical records.**

To receive DIB benefits, an individual must be unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment, which could be expected to result in death or to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). An individual's DIB ends when substantial evidence supports a finding that the individual's impairments have medically improved and that the individual is now able to engage in substantial gainful activity. 42 U.S.C. § 423(f). Whether disability continues is determined by evaluating the above described eight-step sequential test. 20 C.F.R. § 404.1594.

To reach such a conclusion, the Court establishes the comparison point decision date ("CPD") as it relates to the last favorable medical decision for Plaintiff. In the case record, Plaintiff's asthma and chronic bronchitis were last found to meet Listing 3.03B[2] in a determination on April 14, 1998. Therefore, the comparison point date is April 14, 1998. Plaintiff's symptoms, as of that date, included shortness of breath, coughing, and wheezing. Plaintiff's condition required him to visit the hospital five times in the span of the year

---

[2]Listing 3.03B requires a diagnosis of asthma with: attacks as defined in 3.00C in spite of prescribed treatment and requiring physician intervention occurring at least once every two months or at least six times a year. Each inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, section 3.03B.

prior to 1998 because his symptoms were poorly controlled.  These, therefore, are the pertinent physical symptoms and conditions for a comparison with the current reported medical records.

Subsequent to the favorable decision, medical records beginning in May 2001 regarding his existing impairments show Plaintiff's physical symptoms were mild wheezing and no more than mild obstructive pulmonary impairment.  (R. 312).  In 2001, medical evidence showed that Plaintiff stopped his use of cocaine, a narcotic that greatly exacerbated his symptoms.  (R. 278, 292).  Plaintiff's condition only required one hospital visit in 2001 and a brief hospitalization in 2002.  (R. 332).  Therefore, during this twelve month period, Plaintiff did not accumulate the minimum six interventions a year required by Listing 3.03B.  Thus, a comparison of the CPD medical records and the current medical records show substantial evidence of a decrease in medical severity occurring involving improvement in the symptoms, signs, (and/or) laboratory findings associated with the claimant's existing impairments.[3]  This Court concludes that Plaintiff's showing of medical improvement is ample for the de minimis standard that requires any improvement in the existing impairment.

This finding is consistent with step three in the eight-step analysis.  Plaintiff no longer met Listing 3.03B and there was a decrease in the medical severity of his asthma. Thus, when comparing his condition on April 14, 1998, to the current medical records,

---

[3]The ALJ discussed Dr. Houser's opinion that Plaintiff was disabled (R. 349), but found it was not based upon any pulmonary function tests or other objective data.  This Court agrees with the ALJ that such an opinion is not substantial evidence to contradict the other evidence of record.

there is substantial evidence to support the ALJ's decision that Plaintiff's impairment had improved.

**Issue 2: Whether the finding that Plaintiff could perform a significant number of jobs given his RFC was supported by substantial evidence.**

Once there is a finding of medical improvement by a decrease in medical severity, the Court must determine whether the ALJ properly determined that the improvement was related to the claimant's ability to do work at step four. 20 C.F.R. § 404.1694(f)(3). In order for this Court to find proof that Plaintiff's RFC increased so that he could perform a range of medium work, the Court must find that the ALJ weighed information provided about Plaintiff's subjective symptoms. 20 C.F.R. § 404.1512(b)(1); 20 C.F.R. § 404.1529. This is a decision made by the ALJ, and may be supported by the testimony of a VE.[4]

In this case, the ALJ considered Plaintiff's daily activities as they reflect on Plaintiff's asthma and chronic bronchitis. The ALJ found that the Plaintiff's explanation of his daily activities was credible (R. 14) and that his ability to cook and grocery shop, attend

---

[4]SSR 96-9P, Use of Vocational Resources:

> When the extent of erosion of the unskilled sedentary occupational base is not clear, the adjudicator may consult various authoritative written resources, such as the DOT, the SCO, the Occupational Outlook Handbook, or County Business Patterns.
>
> In more complex cases, the adjudicator may use the resources of a vocational specialist or vocational expert. The vocational resource may be asked to provide any or all of the following: An analysis of the impact of the RFC upon the full range of sedentary work, which the adjudicator may consider in determining the extent of the erosion of the occupational base, examples of occupations the individual may be able to perform, and citations of the existence and number of jobs in such occupations in the national economy. (Footnote omitted.)

church and AA meetings, and visit with relatives indicates a "fairly full range of daily activities." (R. 14, 41-45).

In addition, Plaintiff has been able to perform recently at a part-time job with only occasional flare-ups of asthma. (R. 14, 30, 34-36). Additionally, Plaintiff's testimony that he has been able to exercise at the YMCA two times a week using the treadmill for 45 minutes to an hour is also some evidence of an improvement in Plaintiff's asthma condition. (R. 13, 38-39). Finally, the ALJ noted that the results of the Plaintiff's pulmonary function tests have improved since 1998. The most recent test performed in August 2002 showed "mild" obstructive pulmonary impairment. (R. 324). This information about improvement in pulmonary function in combination with the reports of Dr. Sander's examination in March 2002 (R. 313) showing "normal strength" is substantial evidence upon which the ALJ could have concluded that in combination with his daily activities shows Plaintiff could perform medium work. Thus, this Court finds that the ALJ's determinations that there was a decrease in the medical severity of Plaintiff's impairment and that it did have an effect on his ability to do work are both supported by substantial evidence. 20 C.F.R. § 404.1594(f)(3)-(4). Therefore, it was proper for the ALJ's evaluation to proceed to step six.

At step six, the ALJ was required to search the record to determine if Plaintiff has some other severe impairment that would also impair his ability to return to work. In August 2002, Plaintiff's blood pressure was well controlled on medication and there was no evidence of any other impairment. (R. 312). The testimony found in the record that

Plaintiff is exercising and working provides substantial evidence that Plaintiff is not suffering from any other severe impairment. Therefore, step six of the eight-step regulation has been evaluated adequately. 20 C.F.R. § 404.1594(f)(6).

Step eight of the process requires the ALJ to examine the evidence of the existence of some type of employment available to a person with Plaintiff's RFC. In this case, the VE's findings that Plaintiff could perform 3,000 medium jobs and 5,000 light jobs in the Evansville area, including jobs as an inspector, an assembler, and a machine operator is evidence that Plaintiff can perform other work given his RFC, age, education, and vocational experience. The Court, therefore, concludes that Plaintiff is no longer entitled to disability benefits. 20 C.F.R. § 404.1594(f)(8).

## VIII. Conclusion

The ALJ's decision is supported by substantial evidence. The ALJ properly concluded that Plaintiff's medical condition had improved. Additionally, the ALJ's determination that Plaintiff's RFC increased is supported by substantial evidence. Thus, the final decision of the Commissioner is **AFFIRMED,** and this case is **DISMISSED, with prejudice.**

SO ORDERED.

Dated: March 27, 2006.

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

**Mail copy to:**

Charles P. Coit
608 Covert Avenue
Evansville, IN  47714


**Electronic copies to:**

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov